# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**EDWARD JOSEPH DiMAURO, and JUDY LOUISE DiMAURO,**<br><br>Debtors. | Chapter 13<br><br>Case No. 11-10378 (BLS) |
| **EDWARD JOSEPH DiMAURO, and JUDY LOUISE DiMAURO**<br><br>Plaintiffs,<br><br>v.<br><br>**WILMINGTON TRUST COMPANY,**<br><br>Defendant. | Adv. No. 15-51346 (BLS) |

| | |
|---|---|
| LAW OFFICES OF VIVIAN A. HOUGHTON<br>Vivian A. Houghton, Esq.<br>800 West Street<br>Wilmington, DE 19801<br>*Counsel for Plaintiffs-Debtors* | LOSCO & MARCONI, P.A.<br>Thomas C. Marconi, Esq.<br>1813 N. Franklin Street<br>P.O. Box 1677<br>Wilmington, DE 19899<br>*Counsel for Defendant, M&T Bank as successor to Wilmington Trust Company* |

# OPINION

This case presents a question of first impression in this Court: What is the proper date for valuing residential property for the purpose of determining whether a junior mortgage is completely unsecured (and thus subject to strip-off) under § 1322(b)(2) of the Bankruptcy Code?  For the reasons stated below, the Court concludes that the operative date for that determination is the Petition Date.

## BACKGROUND

Edward and Judy DiMauro (the "Debtors") filed their Chapter 13 petition on February 7, 2011.  At the time of the filing, the Debtors' home was subject to two mortgages held by Wilmington Trust Company ("WTC") and Beneficial Delaware Inc. ("Beneficial"), respectively.  A dispute arose between WTC and Beneficial as to which lender's lien was senior on the Debtors' home.  By letter ruling dated August 27, 2015, the Court determined that, by virtue of a valid subordination agreement executed between these lenders, Beneficial's lien is senior to WTC's. [Docket No. 126].  The Debtors' schedules listed a value for their home of $240,000.  Beneficial and WTC filed secured claims in the amount of $299,177.23 and $69,174.83, respectively.

The Debtors commenced this adversary proceeding against WTC shortly after the priority dispute between Beneficial and WTC was resolved. By their Complaint, the Debtors seek to strip off the WTC lien on the ground that it is wholly unsecured. The Debtors contend that the appropriate date to value the home is the Petition Date (*viz.*, February 7, 2011). WTC opposes the strip-off request, and contends that the date for valuing the home should be no earlier than September 15, 2015 (the date of filing of the Debtors' most recent Amended Chapter 13 Plan).

The Court is not being asked at this time to place a value on the Debtors' home. Rather, the parties have advised the Court that the operative date for valuation is a gating question, presumably because of substantial changes in the local real estate market between early 2011 and late 2015. The issue has been fully briefed [Docket Nos. 8 and 13] and argued, and is ripe for decision.

## **DISCUSSION**

Bankruptcy Code § 506 governs the determination of the secured status of a claim. This section provides that claims secured by a lien on property of the bankruptcy estate may generally be divided into secured and unsecured components. 11 U.S.C. § 506. The secured component is the amount of the claim up to the value of the property at

issue, and the remainder of the claim—the amount in excess of the value of the property—is unsecured. See 11 U.S.C. § 506.

An exception set forth in Section 1322(b)(2) prohibits the modification of "a claim secured only by a security interest in real property that is the debtor's principle residence . . ." 11 U.S.C. § 1322(b)(2). The Supreme Court has held that § 1322(b)(2) prohibits the bifurcation of an *undersecured* home mortgage holder's claim. Nobelman v. Am. Sav. Bank, 508 U.S. 324, 332, 113 S. Ct. 2106, 2111, 124 L. Ed. 2d 228 (1993). The Third Circuit, interpreting *Nobelman*, found an exception to this exception—holding that "a *wholly unsecured* mortgage is not subject to the antimodification clause in § 1322(b)(2)." In re McDonald, 205 F.3d 606, 615 (3d Cir. 2000) (emphasis added). Phrased differently, the McDonald court held that a chapter 13 plan can modify the rights of a junior lienholder on a principal residence if the junior lender is entirely "out of the money." Thus, in order to determine whether a chapter 13 plan can modify the rights of a junior lien holder the Court must make two determinations: (1) that the property is the debtor's principle residence; and (2) that the junior lender is completely unsecured or "out of the money."

With this in mind, the Court turns back to the question: What is the proper date for valuing residential property for the purpose of

4

determining whether a junior mortgage is completely unsecured (and thus subject to strip-off) under § 1322(b)(2) of the Bankruptcy Code? Section 506(a) provides that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."  As a result of this statutory language, depending on the purpose of the valuation, bankruptcy courts have used various dates for valuation.  For example, the majority of cases addressing valuation of collateral in the cram down context of § 1325(a)(5)(B) conclude that collateral should be valued as of or near the confirmation date.  <u>See, e.g.</u>, <u>In re Gutierrez</u>, 503 B.R. 458, 461 (Bankr. C.D. Cal. 2013) (citing <u>In re King</u>, No. 01-37214DWS, 2003 WL 22110779, at *2-3 (Bankr. E.D. Pa. Sept. 2, 2003)).  Courts generally agree that exemptions are determined as of the date of the petition.  <u>See, e.g.</u>, Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 107.1, at ¶ 6, Sec. Rev. June 7, 2004 (citations omitted).  However, with respect to motions for adequate protection under § 363(e) or in the context of motions for relief from stay, courts disagree over whether the point of reference should be the petition date, the date on which the request is first made, or the date on which the request is heard.  <u>See, e.g.</u>, 4 Collier on Bankruptcy ¶

5

506.03[10] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citations omitted).

The cases that have addressed the appropriate valuation date for purposes of section 1322(b)(2), as the Court is asked to do here, have used a range of dates—anywhere from the petition date to a date at or near confirmation. See, e.g., TD Bank, N.A. v. Landry, 479 B.R. 1, 9 (D. Mass. 2012) (reversing a lower court's decision to use the confirmation date and holding that the petition date was the proper date); Gutierrez, 503 B.R. at 466 (petition date). Some courts have adopted a bright line rule. See, e.g., Landry, 479 B.R. at 9. Other reported cases have applied a flexible "totality of the circumstances approach." See, e.g., In re Aubain, 296 B.R. 624, 636 (Bankr. E.D.N.Y. 2003); In re Wood, 190 B.R. 788 (Bankr. M.D. Pa. 1996). The Wood court set forth various equitable factors to be used in determining what valuation date should apply, these include:

> (i) The impact of the debtor's efforts on the postpetition change in value.
> (ii) The expectancies of the parties at the time they may have made the loan agreement (if any).
> (iii) The desirability of uniformity. Will the application of different dates for valuation purposes reach an absurd result?
> (iv) The convenience of administration.
> (v) The equitable concept that those who bear the risk should benefit from the rise in value.
> (vi) A resulting windfall to any one party should be discouraged.

>    (vii)    The bankruptcy policy set forth in section 552(b) which extends prepetition liens to post-petition proceeds in certain situations.
>    (viii)    The bankruptcy policy set forth in 11 U.S.C. § 362(d), which encourages the tendering of adequate protection payments to a creditor holding depreciating collateral.
>    (ix)    The off-stated policy of bankruptcy to secure the debtor a "fresh start".
>    (x)    The result of utilizing a specific date of valuation on the bankruptcy itself including that impact upon senior and junior lien creditors.
>    (xi)    Whether the party benefitting from a delay in valuation has been responsible for that delay.

Wood, 19 B.R. at 794–95.  Both the Debtors and WTC have cited Wood in their brief and have applied the factors to argue their respective positions.

In *In re McDonald*, the Third Circuit did not decide which date is appropriate for determining whether a mortgage is wholly unsecured, but observed that the rule that is eventually adopted should minimize the opportunity for gamesmanship.  See McDonald, 205 F.3d 606, 615 (3d. Cir. 2000) ("Although we need not resolve the issue, we point out that whatever rule is adopted, it is desirable to avoid allowing an appeal to delay the date used for evaluation. Such a rule could encourage the losing party to bring an appeal in the hope of obtaining a more favorable evaluation.").  While there is great appeal to a methodology that permits courts to tailor a remedy to the particular circumstances of a case, such flexibility comes at the expense of

7

uniformity and predictability. A bright line rule of the petition date minimizes gamesmanship and reduces the incentive to delay litigation or appeals. Any other approach, such as the confirmation date, could be subject to abuse by parties deliberately adjourning or delaying proceedings in hopes of a different result. These overarching principles persuade the Court to adopt the bright line rule of the petition date as the operative date for valuation of residential property under § 1322(b).

## CONCLUSION

For the foregoing reasons, the Court concludes that the Petition Date is the operative date for determining whether a junior mortgage is completely unsecured (and thus subject to strip-off) under § 1322(b)(2) of the Bankruptcy Code. An appropriate Order follows.

**BY THE COURT**:

Dated: April 14, 2016
Wilmington, Delaware

_____
Brendan Linehan Shannon
Chief United States Bankruptcy Judge